UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PHILADELPHIA INDEMNITY
INSURANCE CO.,

    Plaintiff,

v.

JOSEPH FOX, *et al.*,

    Defendants.

Case No. 2:18-cv-991
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on Plaintiff Philadelphia Indemnity Insurance Co.'s ("Philadelphia") *Motion for Summary Judgment*. (ECF No. 12.) Defendants Joseph Fox and Rebecca Fox (collectively "Defendants") filed a *Response* (ECF No. 15) in which they notified the Court "that they do not intend to oppose the relief sought" in Philadelphia's Motion. (*Id.*) For the reasons set for below, the Court **GRANTS** Philadelphia's *Motion for Summary Judgment*. (ECF No. 12.)

I.

**A. Undisputed Factual Background**

Fox Mechanical Co. ("Fox Mechanical"), which is not a party to this suit, was a construction contracting business that occasionally required surety bonds for its construction contracts. Philadelphia issued surety bonds (the "Bonds") on behalf of Fox Mechanical. As a condition of Philadelphia issuing the Bonds, Fox Mechanical (as the Surety) and Defendants (as the Indemnitors) executed an indemnity agreement (the "Indemnity Agreement") in favor of Philadelphia (as the Principal) on September 19, 2012. Philadelphia, Fox Mechanical, and

Defendants executed the Indemnity Agreement in Ohio. (*See* Pl.'s Mot. for Summ. J., Ex. A ("Skowron Aff."), Ex. 1 at 11, 13.)

Philadelphia asserts that, by executing the Indemnity Agreement, Defendants: (1) agreed to indemnify Philadelphia for all "Loss"; (2) granted Philadelphia the sole discretion to settle bond claims on the basis of liability, necessity, or expediency; (3) agreed to collateralize Philadelphia relative to any "Loss" associated with any disputed claims; (4) agreed that Philadelphia may recover any payments it makes without deliberate and willful malfeasances; and (5) agreed that a sworn itemization of Philadelphia's payments would constitute *prima facie* evidence of the fact and extent of the Indemnitors' liability to Philadelphia. (*Id.* at ¶ 2; *see id.*, Ex. 1, ECF No. 13-1.) Relying on Defendants' execution of the Indemnity Agreement, Philadelphia issued the Bonds on behalf of Fox Mechanical. (Skowron Aff. at ¶ 3.) Defendants never deposited any collateral with Philadelphia related to its potential Loss under the Bonds. (*Id.* at ¶ 4.)

After numerous claims were asserted against Philadelphia under the Bonds, however, Philadelphia exercised its right to settle claims and therefore made the following disbursements:

| Claim No. | Bond No. | Obligee-Payee | Project Name | "Loss" Paid |
|---|---|---|---|---|
| 1021028 | PB11328100003 | Local 189 Plumbers & Pipefitters | Wage Bond – Mechanical Contractor | $30,000.00 |
| 1021030 | PB11328100004 | Local 189 Plumbers & Pipefitters | Fringe Benefit Bond – Light Commercial | $179,664.18 |
| 1024988 | PB11328100076 | Local 189 Plumbers & Pipefitters | Wage Bond – Mechanical Contractor | $5,000.00 |
| 1024820 | PB11328100075 | Local 189 Plumbers & Pipefitters | Fringe Benefit Bond – Light Commercial | $1,443.09 |
| 955141 | PB11328100058 | Summit Construction | Tallmadge Elementary School | $124,970.60 |
| 955141 | PB11328100058 | Columbus Heating | Tallmadge Elementary School | $110,948.80 |
| Total | | | | $452,026.67 |

(*Id.*)

In addition to those disbursements it has already incurred, Philadelphia will soon pay an additional $23,441.60 to resolve a preference claim Fox Mechanical's bankruptcy trustee has asserted. (*Id.* at ¶ 5; *see* Pl.'s Mot. for Summ. J. at 7–8). Philadelphia has also paid $24,169.41 in attorneys' fees and expenses and has incurred an additional $7,448.00 in unpaid attorneys' fees, as a result of issuing the Bonds and enforcing the Indemnity Agreement. (Skowron Aff. at ¶ 6). Philadelphia avers it has incurred a total loss of $507,085.68. (*Id.* at ¶ 7.) Philadelphia asserts that it paid these claims only after investigating each individually and while exercising the honest belief that liability, necessity, or expedience required these payments. (*Id.* at ¶ 8.)

**B. Procedural Background**

On August 31, 2018, Philadelphia filed suit against Defendants. (*See* ECF No. 1.) On November 19, 2018, Philadelphia filed its Amended Complaint (ECF No. 9) against Defendants, requesting Defendants' specific performance of a collateral obligation (Count I), and alleging that Defendants breached the Indemnity Agreement (Count II). In its Motion for Summary Judgment, Philadelphia explains that the parties have settled the specific performance claim and so Philadelphia only moves for summary judgment on its breach of contract claim. (*See* Pl.'s Mot. for Summ. J. at n.1, ECF No. 12.) Philadelphia avers that summary judgment in its favor on that claim will fully resolve this action. (*Id.*) As discussed *supra*, Defendants filed a one-page Response by which they informed the Court that "they do not intend to oppose the relief sought" by Philadelphia. (*See* ECF No. 15.)

**II.**

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has

3

the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Assn.*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

### III.

**A. Ohio Law Applies.**

In this diversity case, Philadelphia has one remaining claim against Defendants for breach of contract. A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state in which the court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494–96 (1941). Under Ohio law, courts apply interest-analysis tests set forth in the *Restatement*

4

(Second), Conflict of Laws to determine the applicable law. *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 824 (6th Cir. 1996)

The basis of the action—*i.e.*, either a tort case or a contract case—determines which of the Restatement's interest-analysis tests applies. *Id.* When an action is based in contract, section 188 of the Restatement requires a court to apply the law of the state where the contract was executed. *Miller*, 87 F.3d at 825 (citing *Nationwide Mut. Ins. Co. v. Ferrin*, 21 Ohio St. 3d 43, 487 N.E.2d 568, 569 (1986) (per curiam)). It is undisputed that the Indemnity Agreement was executed in Ohio. Therefore, Ohio law applies.

**B. Under Ohio Law, Defendants Breached the Indemnity Agreement.**

In Ohio, a breach of contract occurs when: (i) a party demonstrates the existence of a binding contract or agreement; (ii) the nonbreaching party performed its contractual obligations; (iii) the allegedly breaching party failed to fulfill its contractual obligations without legal excuse; and (iv) the nonbreaching party suffered damages as a result of the breach. *Spectrum Benefit Options, Inc. v. Med. Mut. Of Ohio*, 174 Ohio App.3d 29, 880 N.E. 926, 934 (2007).

To prove its claim, Philadelphia argues that: the Indemnity Agreement is a valid express contract, Philadelphia performed its obligations under the Indemnity Agreement, Defendants breached the Indemnity Agreement by failing to indemnify Philadelphia for the "Loss" it has incurred and continues to incur as a result of issuing the Bonds to Fox Mechanical, and Philadelphia suffered $507,085.68 because of Defendants' breach. Defendants do not oppose Philadelphia's claims, which Philadelphia has supported with evidence. (*See* Skowron Aff.)

Upon reviewing the evidence, Philadelphia has established all four elements of its breach of contract claim. Therefore, the Court concludes that it is undisputed that Defendants breached the Indemnity Agreement.

5

First, the Indemnity Agreement is a valid express contract, which Defendants executed on September 12, 2012. (*Id.*) By executing the Indemnity Agreement, Defendants: (1) agreed to indemnify Philadelphia for all Loss; (2) granted Philadelphia the sole discretion to settle bond claims on the basis of liability, necessity, or expediency; (3) agreed to collateralize Philadelphia relative to any Loss associated with any disputed claims; (4) agreed that Philadelphia may recover any payments made without deliberate and willful malfeasances; and (5) agreed that a sworn itemization of Philadelphia's payments would constitute *prima facie* evidence of the fact and the extent of the Indemnitors' liability to Philadelphia. (*Id.*)

Next, Philadelphia has established that it performed its obligations under the Indemnity Agreement and that Defendants did not. To prove both, Philadelphia supports its Motion for Summary Judgment with the affidavit of Allison Skowron ("Skowron"), a Senior Claims Counselor for Philadelphia, who is a custodian of the records related to Defendants and who has knowledge regarding Philadelphia's allegations against Defendants. (*See* Skowron Aff.) Skowron avers that "[i]n reliance upon [Defendants'] execution of the Indemnity Agreement, Philadelphia issued various surety bonds ... on behalf of Fox Mechanical." (*Id.* at ¶ 3.) Further, Skowron asserts that "claims were asserted against Philadelphia under the Bonds, but neither Fox Mechanical nor [Defendants] deposited any collateral with Philadelphia relative to [Philadelphia's] exposure to "Loss" resulting from the claims against the Bonds." (*Id.* at ¶ 4.) Based on these sworn, uncontested statements, the Court concludes that the Defendants' failure to deposit any collateral with Philadelphia and their failure to indemnify Philadelphia for the Loss it suffered constitute breaches of the Indemnity Agreement.

Finally, Philadelphia has established the amount of damages it has suffered as a result of Defendants' breach of the Indemnity Agreement. Skowron's affidavit contains a sworn itemized

6

list of Philadelphia's Loss. Skowron attests that Philadelphia has suffered those damages because of Defendants' breach. The Court agrees.

In conclusion, Philadelphia has established that there is no genuine dispute as to any material fact regarding its breach of contract claim. Therefore, Philadelphia is entitled to summary judgment against Defendants in the amount of $507,085.68, plus any additional Loss Philadelphia incurs by continuing to enforce the Indemnity Agreement.

## IV.

For the reasons stated above, the Court **GRANTS** Philadelphia's *Motion for Summary Judgment* (ECF No. 12) against Defendants. Accordingly, the Court **DIRECTS** the Clerk to enter judgment against Defendants, jointly and severally, in the amount of $507,085.68, plus any additional Loss Philadelphia incurs as it continues to enforce the Indemnity Agreement.

**IT IS SO ORDERED.**

_6-10-2019_
DATE

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**